The Honorable Ron Fields Prosecuting Attorney Twelfth Judicial Circuit Sebastian County Courthouse Fort Smith, Arkansas 72901
Dear Mr. Fields:
This is in response to your request for an opinion, on behalf of Mr. James E. Turpin, News Director for KFSM-TV 5 in Fort Smith, regarding the Arkansas Freedom of Information Act (FOIA), which is codified at A.C.A. 25-19-101 et seq. (Repl. 1992 and Supp. 1993). In correspondence submitted with your request, Mr. Turpin sets forth the factual basis for his inquiry, a summary of which is provided below.
On Friday January 7, 1994, KFSM-TV 5 requested and was denied access to a meeting of the Fort Smith Chamber of Commerce. The meeting concerned the "Highway 71 Project," and a number of business people from the state were invited to attend, as were a number of elected state officials. After access to the meeting was denied, KFSM-TV 5 made a request under the FOIA to Fort Smith City Administrator Stribling Boynton for records relating to payments made by the City of Fort Smith to the Fort Smith Chamber of Commerce in 1993 and 1994. As evidenced by a letter dated January 11, 1994, Mr. Boynton responded to this request by submitting various records to KFSM-TV 5, including the following: a Fort Smith Chamber of Commerce "Statement" dated November 23, 1992, regarding the City of Fort Smith's chamber membership dues for 12/01/92 to 12/01/93 in the amount of $1,216.00; a "Request for Payment" to the chamber for such dues, dated January 4, 1993, and initialed by City Administrator Boynton; a Fort Smith Chamber of Commerce "Statement" dated June 3, 1993, for City of Fort Smith's portion ($500.00) of "Partners in Education Luncheon"; a "Request for Payment" to the chamber for the luncheon, dated June 3, 1993, and initialed by City Administrator Boynton; a Fort Smith Chamber of Commerce "Statement" dated November 23, 1993, regarding the City of Fort Smith's chamber membership dues for 12/01/93 to 12/01/94 in the amount of $1,277.00; a "Request for Payment" to the chamber for such dues, dated January 5, 1994, and initialed by City Administrator Boynton; a "Request for Payment" to the Fort Smith Chamber of Commerce, dated June 8, 1993, and initialed by City Administrator Boynton for "economic development expenses"; and a letter dated June 10, 1993, from City Administrator Boynton to Mr. Dooly, President of the Fort Smith Chamber of Commerce, in which Mr. Boynton states "[e]nclosed please find a check for $5,254.03 to reimburse the Chamber of Commerce for certain economic development expenses." Copies of the foregoing records were submitted to this office with your request for an opinion. With regard to these matters, you have posed the following questions:[1]
 1. If the City of Fort Smith pays membership dues to the Fort Smith Chamber of Commerce, does this amount to public funding ("supported . . . in part by public funds" under A.C.A. 25-19-103(2)) of the chamber of commerce such that the chamber would become an entity subject to the Arkansas Freedom of Information Act?
 2. If the City of Fort Smith reimburses the Fort Smith Chamber of Commerce for "certain economic development expenses," does this amount to public funding ("expending public funds" under A.C.A. 25-19-103(2)) of the chamber of commerce such that the chamber would become an entity subject to the Arkansas Freedom of Information Act?
With regard to your questions, I will begin by setting forth the general precepts pertaining to when private or nongovernmental organizations become subject to the provisions of the FOIA, after which I will address your questions in the order posed.
The FOIA is applicable to all governmental entities within the state. A.C.A. 25-19-103 and -106(a). The act also applies to nongovernmental or private entities "supported wholly or in part by public funds or expending public funds." A.C.A.25-19-103(2). Federal, state, and local funds are all included in this provision. See e.g., City of Fayetteville v. Edmark,304 Ark. 179, 801 S.W.2d 275 (1990) (municipal funds); Rehab. Hospital Services Corp. v. Delta-Hills Health Systems Agency, Inc., 285 Ark. 397, 687 S.W.2d 840 (1985) (federal funds); Arkansas Gazette Co. v. Southern State College, 273 Ark. 248,620 S.W.2d 258 (1981), app. dism'd, 455 U.S. 931 (1982) (state funds); and Op. Att'y Gen. Nos. 93-154 and 90-236. However, as stated in Op. Att'y Gen. No. 93-154, "the mere receipt of public funds is not, in itself, sufficient to bring a private organization within the act; rather, the question is whether the private entity carries on `public business' or is otherwise intertwined with the activities of government. City of Fayetteville v. Edmark, 304 Ark. 179, 801 S.W.2d 275 (1990)." See also Op. Att'y Gen. No. 83-163 (concluding that where a private entity receives public funds, directly or indirectly, and enjoys a "symbiotic relationship" with the state, the FOIA will apply; also stating that "[w]hen the activities of a private organization and the government become intertwined, the private organization may well render itself part of the State for [FOIA] purposes."); A.C.A. 25-19-102 (the policy statement of the FOIA, stating that "public business" should be performed in an open and public manner). Professor John Watkins has stated this principle as follows: "[T]he FOIA applies only to private organizations that (1) receive public funds, (2) engage in activities that are of public concern, and (3) carry on work that is intertwined with that of government bodies." Watkins, The Arkansas Freedom of Information Act (mm Press, 2d ed. 1994) at 37.
In light of these precepts, it is my opinion that the answer to your first question is "yes." Membership dues paid to the chamber by the City of Fort Smith would certainly constitute partial support of the chamber by public funds under A.C.A.25-19-103(2). Mere receipt of these public funds, however, would not alone be enough to bring the chamber of commerce within the provisions of the FOIA, and thus, the pertinent inquiry is whether the Fort Smith Chamber of Commerce carries on "public business" or is otherwise intertwined with the activities of government, as stated above. Although such determinations are not always easily made, it is my opinion that the activities of the chamber, one of which is "industrial recruitment" (See letter dated November 23, 1993 from chamber to City Administrator Boynton), fall within these categories, so as to bring the chamber of commerce within the provisions of the FOIA.
It is my opinion that the answer to your second question, as posed, is also "yes." Once again, moneys paid by the City of Fort Smith to the chamber of commerce would clearly constitute partial public funding of the chamber under A.C.A.25-19-103(2), and as stated above, it is my opinion that the chamber engages in activities that are intertwined with those of government (such as recruitment of business and other forms of economic development for the area). In fact, the term "reimbursement," as is used in correspondence submitted with your request with respect to the payment of economic development expenses, certainly implies that the chamber of commerce carried on activities which were done, in part, on behalf of the city. Additionally, this office has previously addressed in an attorney general's opinion a similar issue in which it was opined that a private organization (specifically, the Batesville Area Chamber of Commerce) funded in part by local governments to help promote economic and industrial development was subject to the FOIA since, under such circumstances, the organization would be a "quasi municipal . . . governmental agency which is carrying out certain governmental purposes." See Op. Att'y Gen. No. 90-243 at p. 3.
As stated above, it is my opinion that the answer to your second question, as posed, is "yes," but it should be noted that an additional issue may arise in looking at the correspondence submitted with your request, as "reimbursement" for the economic development expenses was made on June 10, 1993 (See letter dated June 10, 1993, as listed on page 2 of this opinion), and thus occurred prior to the January 7, 1994, meeting to which KFSM-TV 5 was denied access. In this regard, Professor John Watkins has noted that in "public funding" cases, a question may arise with respect to a private entity that no longer receives public funds. Citing, in part, Op. Att'y Gen. Nos. 88-004 and 92-220, Professor Watkins states the following:
 With respect to records, the Attorney General has opined that documents coming into the entity's possession after the termination of such support are not subject to the act, while records created or received during the funding period (and directly related to the entity's publicly funded activities) remain open to the public on a continuing basis. Under the same reasoning, of course, meetings held after the funding has come to an end would not be covered by the FOIA. A factual inquiry will be necessary to determine the point at which the entity is no longer supported by public funds.
Watkins, The Arkansas Freedom of Information Act (mm Press, 2d ed. 1994) at 41.
If the "reimbursement" expenses were paid for activities which are no longer going on, then one might argue that public funding has ended. As Watkins notes above, the determination of when public funding has ended is a factual inquiry, and this office is neither empowered nor equipped to make such a finding. However, even it were determined that public funding of the chamber in the form of economic development expenses has ended, the chamber, in my opinion, would still be subject to the provisions of the FOIA because of my response to your first question.
Finally, it should be noted that an additional issue which may arise in "public funding" cases concerns "the degree to which the records and meetings of a private entity supported in part by public funds are subject to the FOIA." Watkins, The Arkansas Freedom of Information Act (mm Press, 2d ed. 1994) at 41. On this issue, Professor Watkins states the following:
 The Court's opinion [City of Fayetteville v. Edmark, 304 Ark. 179, 801 S.W.2d 275
(1990)] suggests rather clearly that a private organization that enjoys only partial financial support from government is only partially bound by FOIA requirements. That is, the act will apply only to records and meetings `relevant to [the] task' for which a private contractor is hired or a nonprofit corporation receives a government grant. . . . As discussed more fully below, only the `governing bodies' of entities covered by the FOIA are required to meet in public. While the board of directors of a private corporation would qualify as a governing body, it must meet publicly only to discuss matters pertaining to the activities for which the corporation receives government funds.
Watkins, The Arkansas Freedom of Information Act (mm Press, 2d ed. 1994) at 41.
With regard to this issue, a determination would have to be made on a case by case basis according to the particular records or meetings in question.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Nancy A. Hall.
Sincerely, WINSTON BRYANT Attorney General
WB:cyh
[1] As the basis for this request is denial of access of KFSM-TV 5 to a meeting of the Fort Smith Chamber of Commerce, and as you have cited A.C.A. 25-19-103(2) (defining "Public meetings"), I assume that your questions refer to the public meetings provisions of the FOIA, rather than to the those concerning public records. However, as noted by Professor John Watkins in The Arkansas Freedom of Information Act (mm Press, 2d ed. 1994) at 55 (footnote 35), the "public funding" language which appears in A.C.A. 25-19-103(2) also appears (though in a slightly different form) in A.C.A. 25-19-103(1) which defines public records, and the "Supreme Court has used these provisions interchangeably, thereby indicating that the minor variations in wording are irrelevant and that the same analysis applies to both meetings and records. E.g., Arkansas Gazette Co. v. Southern State College, 273 Ark. 248, 620 S.W.2d 258
(1981), app. dism'd, 455 U.S. 931 (1982); North Central Association of Colleges Schools v. Troutt Brothers, Inc.,261 Ark. 378, 548 S.W.2d 825 (1977)."